Case 4:23-cv-00250 Document 16 Filed on 04/30/24 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
April 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jonathan Morrison, | § § § | |
| *Plaintiff,* | § § | Case No. 4:23-cv-00250 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner of Social Security,[1] | § § § § § | |
| *Defendant.* | § | |

# **MEMORANDUM AND ORDER**

This is an appeal from an administrative ruling denying disability benefits. The case was transferred to the undersigned judge upon consent of the parties. Dkt. 6, 10. After carefully considering the parties' briefs, Dkt. 9, 13, 14, the administrative record, Dkt. 5, and the applicable law, the Court grants Plaintiff Jonathan Morrison's request pursuant to 42 U.S.C. § 405(g) to vacate the Social Security Administration's denial of benefits and to remand for further proceedings.

---

[1] Although Martin O'Malley became the Commissioner of Social Security on December 20, 2023, no request to substitute him as Defendant has been filed.

## Background

On December 7, 2020, Morrison filed for social security benefits under Title II. R.288-89. He also applied for supplemental social security income under Title XVI on June 3, 2021. R.290-95. He claimed a disability onset date of November 13, 2020. *Id.* The Commissioner denied Morrison's application for benefits, initially and upon reconsideration. R.111, 133. Morrison then requested a hearing before an administrative law judge (ALJ). R.173. After the hearing, the ALJ issued a decision determining that Morrison is not disabled. R.12-32.

The ALJ first concluded that Morrison had not engaged in substantial gainful activity in the relevant period. R.17. Next, the ALJ determined that Morrison had the following severe impairments: obesity, seizure disorder, diabetes mellitus, migraines, hypertension, degenerative disc disease, dyslexia, traumatic brain injury, neurocognitive disorder, attention deficit hyperactivity disorder, bipolar disorder, intellectual disorder, and depressive disorder. R.18. According to the ALJ's opinion, none of these impairments met or medically equaled the severity of a listed impairment. *Id.*

The ALJ then formulated Morrison's residual functional capacity (RFC), concluding in relevant part that Morrison can:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e., lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours out of an

> eight-hour workday; and sit for six hours out of an eight-hour workday) except he can occasionally climb ramps and stairs. He cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He should avoid rough and uneven surfaces. He is limited to no work around unprotected heights, open flames, or dangerous and/or moving machinery.

R.21.

Finding no past relevant work, the ALJ moved to the last step, concluding that Morrison can perform jobs that exist in significant numbers in the national economy. R.31. Based on testimony from a vocational expert (VE), the ALJ found that Morrison could perform job requirements at the light work exertional level, specifically that of price marker, hotel housekeeper, and silver wrapper. R.32. The ALJ therefore determined that Morrison was not disabled. *Id.*

Morrison appealed the determination to the Social Security Appeals Council, which denied review. R.1, 283-84. This appeal followed. Dkt. 1.

## Legal standard

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to

3

support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (per curiam) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotation marks omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is … disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing

4

any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the last step, the burden shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54. The Commissioner meets this burden by identifying potential alternative jobs existing in significant numbers in the national economy. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). The burden then "shifts back to the claimant to prove that he is unable to perform the alternate work." *Fraga*, 810 F.2d at 1302.

## II.  The RFC fails to account for Morrison's mobility issues and need for a cane.

Morrison's sole argument on appeal is that the ALJ failed to build a "logic bridge" between the medical record and the RFC determination. *See* Dkt. 9.

Before step four in the disability evaluation process, an ALJ must determine a claimant's RFC—the "most the claimant can still do despite his physical and mental limitations." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). When forming the RFC, "an ALJ must perform a function-by-function assessment of a claimant's capacity to perform sustained work-related physical and mental activities." *Beck v. Barnhart*, 205 F. App'x 207, 213 (5th Cir. 2006) (per curiam).

According to Morrison, the ALJ failed to reconcile medical opinions detailing his mobility issues and use of a cane with the lesser restrictions included in the RFC. Dkt. 9. The Commissioner responds that the medical opinions cited by the ALJ support the conclusion that Morrison can perform light work, as specified in the RFC. *See* Dkt. 13 at 1-4. As detailed below, the Court concludes that no substantial evidence supports the RFC.

### A. The ALJ did not reconcile the RFC's "light work" restriction with contrary medical opinions.

The RFC does not comport with the ALJ's persuasiveness findings for the relevant medical opinions. Both parties agree that the key evidence consists of three opinions: two from State agency medical consultants, Dr. Scott Spoor and Dr. Nancy Childs, and one from a consultative examiner, Dr. Phong Luu. *See generally* Dkt. 9, 13. The ALJ found Dr. Spoor's and Dr. Childs's

6

opinions persuasive, without qualification.[2] R.28. Despite finding Dr. Luu's opinion only partly persuasive, the ALJ concluded that the evidence supports Dr. Luu's opinion that Morrison has mobility impairments and needs a cane. R.30. And all three physicians opined that Morrison cannot stand or walk more than two hours each day and must use a cane. *See* R.103 (Dr. Spoor); R.147 (Dr. Childs); R.458 (Dr. Luu's more restrictive findings). Yet the ALJ formulated an RFC that deemed Morrison capable of standing and walking for six hours each day and omitted his need for a cane. R.21. This was error.

    1.    <u>The RFC did not incorporate Morrison's mobility limitations.</u>

Medical evidence does not support the RFC determination that Morrison can "stand and walk for *six hours* out of an eight-hour workday." *See* R.21 (emphasis added). Drs. Spoor and Childs explicitly found that Morrison was only able to stand and walk for *two hours* in an eight-hour workday, due to "antalgic gait, back pain, and a positive SLR." R.103 (Dr. Spoor) (emphasis added); *see also* R.147 (Dr. Childs). They also stated that Morrison could not "stand or bend or lift long" and was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. R.103-04 (Dr. Spoor); R.134-35 (Dr. Childs). Dr. Luu found even greater limitations. According to Dr. Luu,

---

[2] Contrary to the Commissioner's contention, Morrison does not dispute the ALJ's persuasiveness findings for Drs. Spoor and Childs. *See* Dkt. 13 at 4-6. Instead, Morrison argues that those physicians' opinions, which the ALJ embraced, contravene the RFC. *See* Dkt. 14 at 1-3.

7

"[u]nbearable pain is precipitated by walking approximately 10 minutes, standing for about 15 minutes, sitting about 1 hour, or lifting approximately 10 lbs." R.458.

The ALJ noted that these physicians' findings were "compatible with lumbar radiculopathy, leg weakness, [and] difficulty walking," which was "consistent with, and supported by, the medical evidence at the hearing level." R.30; *see also* R.28. Despite acknowledging their opinions—which restricted Morrison to standing and walking no more than two hours each day—and finding them persuasive, the ALJ did not reconcile them with his conclusion that Morrison could stand and walk six hours per day.[3]

Moreover, Morrison correctly argues that the ALJ's decision mischaracterizes the State agency consultant's opinions by stating they "opined that [Morrison] could perform light work." *See* R.28; *see also* Dkt. 13 at 5 (Commissioner similarly mischaracterizing the State agency medical opinions); Dkt. 14 at 2 (disputing Commissioner's characterizations). Under the regulations—and as acknowledged by the ALJ, R.21—light work requires standing and walking for "approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6 (S.S.A. Jan. 1, 1983). But Drs. Spoor and Childs

---

[3] Morrison asserts that the Commissioner's failure to address this issue constitutes a waiver. Dkt. 14 at 2. Because the RFC is not supported by substantial evidence, the Court declines to address the waiver question.

8

opined that Morrison cannot stand and walk more than two hours per day. R.103 (Dr. Spoor); *see also* R.141(Dr. Childs). As those doctors also found, *see* R.109 (Dr. Spoor); R.147 (Dr. Childs), that limitation fits the definition of *sedentary* work, where "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5. The findings of Drs. Spoor and Childs, which the ALJ deemed persuasive, squarely contradict the RFC without any articulated justification.

The Commissioner does not cite, and the record does not reflect, any countervailing evidence supporting the RFC's lesser standing-and-walking restriction or its conclusion that Morrison can perform light work. Instead, the Commissioner highlights other findings from the same physicians. *See* Dkt. 13 at 2-5. Those findings have no bearing on Morrison's mobility difficulties. For example, Morrison could use his arms to push himself off a chair and get on and off the examination table. R.458-59. But Morrison's ability to use his arms to shift from a sitting to standing position says nothing about his ability to remain on his feet for an extended period. The Commissioner also highlights Dr. Luu's examination of Morrison's x-ray results, indicating that Morrison has no fractures, joint inflammation, or muscle atrophy. R.458-59, 463. Yet the same x-ray revealed "[d]egenerative changes ... from L3-L5" that support Morrison's claims. *See* R.463. Lacking any explanation from the ALJ, the Court cannot build a logic bridge between those findings and the RFC.

9

In sum, the ALJ agreed with the State agency consultants that Morrison is limited to two hours of standing and walking and found these opinions persuasive. R.28. The RFC's six-hour limitation contradicts those opinions. And the ALJ's opinion cited no evidence and provided no explanation for this inconsistency. The opinion also mischaracterized the State agency medical consultant's opinions as a light work restriction when they classified Morrison as limited to sedentary work. These facially irreconcilable conclusions show that substantial evidence fails to support the RFC. *See, e.g., Garza v. Comm'r, Soc. Sec. Admin.*, 2021 WL 5362081, at *3 (N.D. Tex. Nov. 2, 2021) (RFC lacked substantial evidence when despite "having found that the opinion of Dr. Patrick is persuasive and consistent with his examination, the ALJ failed to incorporate the limitations described by Dr. Patrick into his residual functional capacity assessment"), *adopted by* 2021 WL 5357552 (N.D. Tex. Nov. 17, 2021).

    2.   <u>The RFC omitted Morrison's medically necessary cane use.</u>

Equally apparent is the erroneous omission of Morrison's cane use from the RFC. "The RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." SSR 96-9P, 1996 WL 374185, at *5 (S.S.A. July 2, 1996). That mandatory narrative includes use of any "medically required" hand-held assistive device. *Id.* at *7. Such a device is "medically required" when the record contains "medical

10

documentation establishing the need for the device to aid in walking or standing, and describing the circumstances for which it is needed." *Temple v. Saul*, 2020 WL 6075644, at *3 (S.D. Tex. Oct. 14, 2020) (quoting SSR 96-9P, 1996 WL 374185, at *7).

A recent opinion illustrates when the RFC must include a claimant's use of a cane. *See Duenes v. Kijakazi*, 578 F. Supp. 3d 859, 872-73 (S.D. Tex. 2022). In *Duenes*, the claimant had an antalgic gait, and diagnostic tests supported his need for a prescribed cane. *Id.* Although the ALJ mentioned these limitations, the RFC "did not address Duenes's prescription for a cane, use of cane, or medical records documenting observations by his health care providers about his use of a cane and antalgic gait." *Id.* at 872. This Court found reversible error because "[b]oth objective medical evidence and subjective evidence support Duenes'[s] need for a cane and the ALJ should have addressed that evidence." *Id.*

Similarly here, Morrison's podiatrist prescribed a cane "because of falling," and x-ray results showed degenerative changes in his spine. R.457, 463. In addition, Drs. Spoor, Childs, and Luu uniformly noted Morrison's antalgic gate and need for a cane. R.103 (Dr. Spoor); R.138 (Dr. Childs); R.457-58 (Dr. Luu). Like the ALJ in *Duenes*, the ALJ in this case also acknowledged Morrison's antalgic gait and "dependen[ce] on a cane for ambulation and

11

balance." R.25. And the ALJ did not note any records controverting Morrison's testimony that he needs a cane. *See* R.22-28.

In short, both the subjective and objective medical evidence indicate that Morrison's cane is medically required. The ALJ thus erred by failing to include this limitation in the RFC or explain "how the evidence in file was considered in the assessment." *See* SSR 96-9P, 1996 WL 374185 at *5; *see also Heather H. v. Kijakazi*, 2021 WL 4138406, at *9 (S.D. Tex. Sept. 10, 2021) ("The ALJ may have considered and may have had valid reasons for not including the cane; but as he did not explain them, the Court is unable to determine whether any such rejection is based on substantial evidence.").

### B. The errors were prejudicial.

The foregoing errors affected the ALJ's ultimate disability determination, warranting remand. This is apparent from the ALJ's reliance, at step five, on the VE's answer to a hypothetical that failed to include Morrison's standing, walking, and cane use limitations. *See* R.86-87 (VE testifying that a hypothetical person with the same limitations later reflected in the RFC could work as a price marker, hotel housekeeper, and silver wrapper); R.31-32 (relying on VE's testimony at step five). A hypothetical based on an RFC that does not incorporate all a claimant's limitations as recognized by the ALJ is defective. *Wilson v. Kijakazi*, 2021 WL 3269762, at

12

\*3 (S.D. Tex. July 30, 2021). "A defective hypothetical is reversible error" and a claimant need not show prejudice. *Id.*

Regardless, the VE's ensuing testimony underscores that the failure to account for Morrison's cane use, by itself, was prejudicial. "To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (internal quotation marks omitted). The omission of a medically required hand-held assistive device is often prejudicial because the claimant "would not be able to do a good deal of walking and would not have both hands available," which affects his exertional limitations. *See Nunley v. Kijakazi*, 2023 WL 2386747, at \*8 (S.D. Tex. Mar. 6, 2023) ("prejudice [wa]s clear" when the RFC did not include the use of a cane).

As a remedy, Morrison requests that this Court remand his case to the Social Security Administration. Dkt. 9 at 16. Remand is warranted (as opposed to directing an award of benefits) because the ALJ did not "seek clarification about [Morrison's] ability to walk or balance." *See Duenes*, 578 F. Supp. 3d at 873. The VE's testimony underscores why clarification is necessary. According to the VE, Morrison could not perform any job in the national economy if he needed a cane for both standing and walking. R.90. But if Morrison needs a cane solely for walking, the VE testified that it would only eliminate the hotel housekeeper job—not the positions of price marker

and silver wrapper. *Id.* Because the ALJ failed to investigate this distinction, the appropriate result is to remand the case for further administrative proceedings.

## Conclusion

For the foregoing reasons, and pursuant to the fourth sentence of 42 U.S.C. § 405(g), it is **ORDERED** that the Social Security Administration's determination is **REVERSED**. It is further **ORDERED** that this case is **REMANDED** to the Commissioner for rehearing.

Signed on April 30, 2024, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge